**PETER R. MERSEREAU,** OSB No. 73202
pmersereau@mershanlaw.com
**KAREN M. VICKERS,** OSB No. 913810
kvickers@mershanlaw.com
MERSEREAU SHANNON LLP
One SW Columbia Street, Suite 1600
Portland, Oregon 97258-2089
Telephone: 503.226.6400
Facsimile: 503.226.0383

Of Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| GRACIA H. MERRILL,<br><br>Plaintiff,<br><br>v.<br><br>M.I.T.C.H. CHARTER SCHOOL TIGARD and DEBI LORENCE,<br><br>Defendants. | Case No. 3:10-cv-00219-HA<br><br>DEFENDANTS' MOTION TO STRIKE DECLARATION OF JANE HALPERT, PH.D. |

## MOTION

Defendants hereby move to strike from the summary judgment record the

Declaration of Jane Halpert, Ph.D., and all references thereto in plaintiff's Memorandum

in Opposition to Defendants' Motion for Summary Judgment.

## EVIDENCE OF JANE HALPERT, PH.D., SHOULD BE STRICKEN

Plaintiff has offered the declaration of Jane Halpert, Ph.D. ("Halpert"). Such evidence is

not relevant because it would not assist the jury in understanding the evidence or in determining

a fact at issue. Halpert's declaration and all references thereto in plaintiff's memorandum and

concise statement must be stricken from the record on summary judgment. FRE 702; FRE 403.

PAGE 1 -    DEFENDANTS' MOTION TO STRIKE DECLARATION OF JANE HALPERT, PH.D.

**A.    HALPERT'S TESTIMONY WOULD NOT ASSIST THE JURY IN THIS CASE.**

FRE 702 provides that expert testimony is admissible where it "will assist the trier of fact to understand the evidence or determine a fact in issue[.]"  There are four criteria that govern the admissibility of expert testimony in the Ninth Circuit: "1) qualified expert; 2) proper subject; 3) conformity to a generally accepted explanatory theory; and 4) probative value compared to prejudicial effect."  *United States v. Amaral*, 488 F.2d 1148, 1153 (9th Cir. 1973).  Halpert's declaration fails to meet at least three of these four criteria.

While Halpert may be generally qualified as an expert in social psychology, such expertise would not assist the trier of fact to decide whether sex or pregnancy discrimination motivated the decision to terminate plaintiff's employment in this case.  Halpert's proffered testimony is not a proper subject for expert opinion, because "the central element of [a disparate treatment claim] is discriminatory intent."  *Ledbetter v. Goodyear Tire & Rubber*, 550 U.S. 618, 624 (2007); see *Int'l Broth. of Teamsters v. U.S.*, 431 U.S. 324, 335 n.15 (1977).

The key fact issue here is whether *this* particular school and *this* particular Director discriminated against *this* particular plaintiff, and the generalized conclusions of social science about the role of "stereotyping" in the workplace cannot possibly shed light on that central question of fact.  Where the subject of proffered expert testimony is within the ability and experience of the trier of fact, the expert's testimony is inadmissible.  *Fortune Dynamic, Inc. v. Victoria's Secret Stores*, 618 F3d 1025, 1040-41 (9th Cir. 2010) (affirming exclusion of expert testimony regarding whether the word "Delicious," as used by defendant, constituted a trademark); and *Beech Aircraft Corp v. United States*, 51 F3d 834, 842 (9th Cir. 1995).

PAGE 2 -    DEFENDANTS' MOTION TO STRIKE DECLARATION OF JANE HALPERT, PH.D.

Here, sex and pregnancy discrimination are subjects well within the experience and understanding of any jury. Testimony about "social frameworks" and "stereotyping" would not be helpful, as several courts have recently ruled. *Ray v. Miller Meester Advertising, Inc.*, 664 N.W.2d 355, 366 (Minn App 2003) ("It is unarguable that virtually all adults in our society know about gender stereotypes"); *E.E.O.C. v. Bloomberg L.P.*, 2010 WL 3466370, 16-17 (S.D.N.Y. 2010) (excluding expert testimony of a social psychologist who opined that gender stereotyping was prevalent at defendant company); and *E.E.O.C. v. Wal-Mart Stores, Inc.*, 2010 WL 583681, 3-4 (E.D.Ky. 2010) (barring social psychologist from testifying that defendant's distribution center was "the kind of environment where gender stereotyping can occur").

### B.    HALPERT'S TESTIMONY IS NOT BASED ON GENERALLY ACCEPTED SCIENCE

Halpert's declaration states that her analysis follows the "social framework" approach, citing *inter alia* the work of Monahan & Walker. Halpert Decl. ¶ 5. The one judicial context in which "social framework analysis" may be permissible is the determination of "commonality" for the purpose of certifying a very large class action, such as the 1.5 million member class in *Dukes v. Wal-Mart Stores, Inc.*, 603 F3d 571, 601-3 (9th Cir. 2010). However, the question is not yet settled. As this court is no doubt aware, the U.S. Supreme Court granted certiorari on December 6, 2010 to review the Ninth Circuit's 6-to-5 *en banc* decision in *Dukes*, and one of the principal issues on appeal is the use of expert testimony as the basis of the class certification. *See id.*, 603 F.3d at 638 -640, Judge Ikuta dissenting.

Even if "social framework analysis" may be of use in the context of class certification, it is particularly ill-suited for application to *individual* cases of alleged disparate treatment, as

PAGE 3 -    DEFENDANTS' MOTION TO STRIKE DECLARATION OF JANE HALPERT, PH.D.

opposed to disparate impact cases.  In individual cases, even Monahan, Walker, and their colleague, Gregory Mitchell, have specifically disapproved the use of their "social framework" theory.  Those few social psychologists who would bring "social framework" conjecture into the courtroom have drawn the following stern rebuke from Monahan, Walker, and Mitchell:

> Whereas <u>Walker and Monahan expressly argued that any inferences to be drawn from the general research to the specific case should be the province of the fact-finder working within a court's instructions</u>, Fiske and Borgida expressly advocated that experts make such linkages for the fact-finder…
>
> Fiske and Borgida described "social framework analysis" as a "scientifically acceptable and well-established approach to using social science evidence in litigation," in which experts draw on their "knowledge of social psychology and the established, peer-reviewed scientific research literature... to analyze the facts of the particular case." [citation omitted] They provide <u>no scientific authority</u> for that proposition, however, and <u>we are aware of no peer-reviewed journal within the social sciences that treats an approach akin to social framework analysis as a valid and reliable method for reaching descriptive or causal conclusions about individual cases</u>.

Monahan, Walker & Mitchell, *Contextual Evidence of Gender Discrimination: The Ascendance of "Social Frameworks*," 94 Va. L. Rev. 1715 at footnote 84 (2008).  (Emphasis added.)  Such misapplication of "social framework analysis," the authors declare, results from confusing "social frameworks" and "social facts."  *Id.* at 1747.  *See also*, Gregory Mitchell, *Good Causes and Bad Science*, 63 Vand. L. Rev. En Banc 133 (2010).  "As Monahan, Walker and I have discussed previously and as I discuss further here, in our view <u>case-specific opinions based on Fiske and Borgida's "social framework analysis" method violate basic rules of expert evidence and are scientifically unreliable</u>."  *Id.*, at footnote 9.  Clearly, the science in this field cannot be characterized as even near to being "generally accepted."

MERSEREAU  SHANNON LLP
L A W Y E R S
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

### C.    HALPERT'S METHOD CANNOT SUPPORT THE INFERENCE OF INTENT

As discussed earlier, discriminatory intent is the central element of a disparate treatment claim. *Ledbetter*, 550 U.S. at 624.  But stereotyping, by Halpert's own admission, often occurs unconsciously and without any intent.  "[S]tereotyping can be an automatic process.  This means that there is not necessarily any intent on the part of the perceiver to stereotype or misjudge the target individual."  Halpert Decl., ¶ 12.

This unconscious – and hence unintentional – aspect of stereotyping has, in itself, been found to be sufficient reason for excluding the testimony of "social framework" experts.  In the recent *Bloomberg* case cited above, the plaintiff's expert "was unable to conclude that Bloomberg managers were intentionally stereotyping pregnant women or women returning from maternity leave."  *E.E.O.C. v. Bloomberg*, 2010 WL 3466370 at 17.  In the present case, Halpert's declaration suffers from exactly the same deficiency, and that deficiency alone is sufficient cause to strike all such evidence from the summary judgment record.

### D.    HALPERT'S EVIDENCE WOULD BE IMPERMISSIBLY PREJUDICIAL

The prejudicial effect of Halpert's evidence is obvious.  Her testimony would amount to a bare conclusion that these defendants fit a "social framework" profile typical of gender-based stereotyping.  Ironically enough, Halpert would herself use a species of "stereotyping" to identify bias against pregnant women.

Thus, rather than explaining the evidence to the jury, Halpert would draw conclusions, based not on evidence admissible in this case, but rather on some generalized portrait of what gender bias usually looks like.  Her only contribution to this case would be to imply – forcefully

MERSEREAU SHANNON LLP
L A W Y E R S
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

and in the guise of "science" – that the plaintiff was the victim of discrimination, despite the fact that she possessed exactly zero personal knowledge on the subject prior to this litigation.

Subjecting jurors to testimony about arcane analytical methods employing such terms as "schemas," "prototypes," "exemplars," and "dissociation" could only lead to confusion. It would suggest to the jury that they, as lay persons, are not capable of deciding whether discrimination had really occurred here. If they believed this message, jurors would be induced to substitute the expert's opinion for their own, thus working irreparable prejudice on defendants. The admission of "social framework" testimony was held to be reversible error in *Ray v. Miller Meester Advertising*, supra, 664 N.W. 2d 366, and for the same reason such testimony was excluded in both *E.E.O.C v. Wal-Mart Stores, Inc.*, and *E.E.O.C v. Bloomberg*, supra. The prejudicial effect of such testimony would far outweigh whatever minimal probative value it may have. FRE 403.

For all the reasons set forth above, the Declaration of Jane Halpert, Ph.D, and all references thereto in plaintiff's memorandum should be stricken. FRE 403.

DATED: January 28, 2011.


MERSEREAU SHANNON LLP


_____/s/ Karen M. Vickers_____
**PETER R. MERSEREAU, OSB No. 73202**
pmersereau@mershanlaw.com
**KAREN M. VICKERS, OSB No. 913810**
kvickers@mershanlaw.com
503.226.6400
Of Attorneys for Defendants

MERSEREAU SHANNON LLP
L A W Y E R S
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400