**Dana L. Sullivan, OSB No. 94483**
E-mail: dana@baaslaw.com
**Kristine Lambert, OSB No. 01068**
Email: Kristine@baaslaw.com
BUCHANAN ANGELI ALTSCHUL
  & SULLIVAN LLP
321 SW 4th Ave.
Portland OR 97204
Telephone: (503) 974-5015
Facsimile: (971) 230-0337

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| GRACIA H. MERRILL,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>MITCH CHARTER SCHOOL TIGARD and DEBI LORENCE,<br><br>　　　　　　Defendants. | Case No. 3:10-cv-00219-HA<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE DECLARATION OF JANE HALPERT, PH.D.**<br><br>Oral Argument Requested |

Plaintiff Gracia H. Merrill submits this memorandum in opposition to defendants' Motion to Strike Declaration of Jane Halpert, Ph.D.

### I.    INTRODUCTION.

Ms. Merrill retained Jane Halpert, Ph.D, a social science researcher with decades of experience, to analyze whether findings from social science research could provide a context for gender stereotyping applicable to the facts of this case. After an extensive review of deposition testimony and the pleadings, as well as the important social science research on the topics of

gender and pregnancy stereotyping, Dr. Halpert was able to correlate social science theories of discrimination and gender stereotyping with the actions of the defendants in this case and conclude that the allegations in this case are consistent with observed patterns of gender stereotyping. Because her findings are helpful to the trier of fact, relevant to the discrimination issues raised and based on reliable methods, her testimony is admissible under Rule 702 of the Federal Rules of Evidence.

This Court should deny defendants' motion to exclude the declaration of Dr. Halpert. MITCH does not appear to attack Dr. Halpert's knowledge, skill, experience, training or education to opine as a social scientist on gender and pregnancy stereotyping. Rather, MITCH argues that Dr. Halpert's declaration should be stricken because (1) her testimony would not assist the jury in this case; (2) her testimony is not based on generally accepted science; (3) her method cannot support an inference of intent; and (4) her evidence would be impermissibly prejudicial. Each of these arguments fails. Dr. Halpert is a highly regarded social scientist whose methods are sound, reliable and appropriate. Testimony from social scientists like Dr. Halpert has been found to be pertinent and helpful to the jury in intentional discrimination cases. Testimony on the effects of gender stereotyping, in particular, has been found admissible and has received widespread judicial support. Further, defendants' objections to Dr. Halpert's expert opinion as too prejudicial go to the weight given the testimony, not its admissibility.

For all of these reasons, defendants' Motion to Strike should be denied and the Court should consider Dr. Halpert's testimony, coupled with the record evidence, as more than sufficient to create an issue of material fact as to plaintiff's claims of sex discrimination.

## II. DR. HALPERT'S EXPERT TESTIMONY IS ADMISSIBLE UNDER FED. R. EVIDENCE 702.

Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The court's role under Rule 702 is to ensure that "an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). The expert's reasoning or methodology must be scientifically valid and applicable to the facts. *Id*. at 592-93. The threshold for admissibility is low and "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee notes (2000 amendments).

The court is not charged with deciding whether an expert's opinion is factually correct. "Generally, the court's analysis focuses on the methodology underlying an expert's testimony rather than the expert's ultimate conclusions." *McClellan v. I-Flow, Corp*, 710 F. Supp. 1092, 1099 (D. Or. 2010). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

### A. Dr. Halpert's Expert Testimony is Relevant and Will Assist the Trier of Fact.

Ms. Merrill brings a sex discrimination case under Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et. seq*., and the existence of gender stereotyping is relevant to sex discrimination claims. See *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250-51 (1989). Thus, under Rule 702, plaintiff is permitted to utilize a qualified expert to present testimony that will

assist the trier of fact in understanding the evidence or determining the factual issues in the case.

The requirement that opinion testimony assist the trier of fact goes to the issue of relevance, *Fox v. Dannenberg*, 906 F. 2d 1253, 1256 (8th Cir. 1990), and the relevancy test under *Daubert* is liberally construed. *Primiano v. Cook*, 2010 U.S. App. LEXIS 8859, *10 (9th Cir. April 27, 2010). "Relevant expert testimony 'logically advances a material aspect of the proposing party's case.'" *McClellan*, 710 F. Supp. at 1100 (quoting *Daubert v. Merrelll Dow Pharm., Inc.*, (*Daubert II*) 43 F.3d 1311, 1315 (9th Cir. 1995)). Even if an expert's testimony overlaps with matters within the jury's experience and expertise, the expert's report is proper under Rule 702 if it assists the jury or trier of fact. *U.S. v. Hall*, 93 F.3d 1337, 1344 (7th Cir. 1996). This is particularly true in the social science context because social science can provide useful and valid information, and ensure the correctness of commonly held beliefs, therefore assisting a jury even though the jury may have beliefs on the subject of the expert's testimony. *Id*.

Dr. Halpert's expert opinion regarding social science research and the stereotyping of pregnant employees and working mothers goes beyond the common knowledge of laypersons and will assist the trier of fact. Dr. Halpert's testimony will provide contextual background on the issue of gender stereotyping. She will further explain how the treatment Ms. Merrill suffered at the hands of MITCH and Debi Lorence is consistent with empirical research on gender stereotyping. Halpert Decl. ¶¶ 42-52.

In a recent Eastern District of Washington case, the plaintiff offered Dr. Halpert's testimony to educate and opine on the same issues presented in this case, gender stereotyping and discrimination. *Maxwell v. Virtual Education Software, Inc.*, No. CV-09-173-RMP (E.D. Wa. Aug. 30, 2010) (attached hereto as Exhibit A to the Declaration of Dana L. Sullivan). Like

defendants herein, the *Maxwell* defendants asserted that Dr. Halpert's opinion was not helpful to the trial of fact or relevant to the discrimination issues. Instead, they asserted that stereotyping was a matter of general understanding and common knowledge. *Id*. at p. 8-9. The court rejected that argument, stating:

> The Court finds that Dr. Halpert's testimony on social science theories of discrimination and stereotyping in the areas of gender and pregnancy and her conclusion regarding whether the behavior she observed in the documents from this case was consistent with those social scientific patterns are relevant because they 'logically advance[] a material aspect of the proposing party's case.'

*Id*. at p.9 (quoting *Daubert II*, 43 F.3d at 1315). This Court should admit Dr. Halpert's testimony in the case at hand for the same reasons.

By admitting Dr. Halpert's testimony, this Court would be joining not only the District Court for the Eastern District of Washington, but numerous other federal courts that have allowed expert testimony on the issue of gender stereotyping and discrimination in Title VII cases. In *Tuli v. Brigham & Women's Hospital, Inc*., 592 F. Supp. 2d 208, 215 (D. Mass. 2009), the court allowed expert testimony that described how stereotyping and discrimination operate, provided context based on empirical research, and explained how the treatment described by the plaintiff was consistent with the research. The evidence provided "insights of established scientific inquiry and social framework analysis," an area in which "the jury may well not have common knowledge." *Id*. at 215-16. Thus, the evidence was deemed helpful and relevant.

Likewise, the court in *Hnot v. Willis Group Holdings LTD*, 2007 U.S. Dist LEXIS 40243 (S.D.N.Y. June 1, 2007), found that expert testimony about the operation of gender stereotyping and the types of conditions under which gender stereotyping flourishes, when "grounded in academic study and practical experience not available to the average layperson," can be valuable and helpful to the jury. *Id*. at *5-7. As explained below, Dr. Halpert has years of experience

researching gender stereotypes and can use this knowledge to enhance the jury's ability to make critical decisions required at trial.

Defendants point to three court decisions to support their contention that Dr. Halpert's social science evidence should be excluded as not "helpful" to the jury. With respect to the first of these three decisions, *Ray v. Miller Meester Advertising, Inc.*, 664 N.W. 2d 355, 366 (Minn. App. 2003), defendants are correct that the court in that case does hold that the proposed expert's testimony on gender stereotyping should be excluded. However, this case is easily distinguishable in that the court's legal analysis of the proffered testimony and its decision to exclude was based upon Minnesota Rules of Evidence, Minnesota Supreme Court precedent and the now abandoned *Frye* standard, *Frye v. U.S.*, 293 F. 1013, 1014 (D.C. Cir. 1923).

In neither of the other two cases did the court hold as broadly as defendants contend. Defendants incorrectly assert that the decisions in *EEOC v. Wal-Mart Stores, Inc.*, 2010 U.S. Dist. LEXIS 13192 (E.D. Ky. Feb. 16, 2010) and *EEOC v. Bloomberg L.P.*, 2010 U.S. Dist. LEXIS 92511 (S.D.N.Y. Aug. 31, 2010) stand for the proposition that social science evidence would not be "helpful." In *EEOC v. Wal-Mart*, the court acknowledged "that gender stereotyping can be admissible evidence of gender discrimination." *EEOC v. Wal-Mart*, 2010 U.S. Dist. LEXIS 13192 at *7-10. The court excluded the testimony of the social science expert in that case as irrelevant because the expert reviewed only the company's general hiring procedures and the composition of the workforce, and focused on the existence of gender stereotyping in the world generally as opposed to its existence in this workplace. *Id*. The expert, thus, failed to opine on the critical issue of whether intentional discrimination occurred at that workplace. *Id*.

The court in *EEOC v. Bloomberg* similarly noted that social science testimony had been accepted by numerous courts and found "to be 'valuable in giving a jury context within which to

evaluate the particular evidence relating to the workplaces at issue….'" *Bloomberg*, 2010 U.S. Dist. LEXIS 92511 at *43 (quoting *Hnot*, 2007 U.S. Dist. LEXIS 40243 at *3). After an exhaustive Rule 702 analysis, the court excluded the proposed social science testimony based on deficiencies in the expert analysis, holding that, under the specific circumstances of that case, the expert's opinion lacked appropriate indicia of reliability and relevance. In making this determination, the court noted that the testimony suffered from methodology deficiencies. The expert relied on insufficient data and facts, and failed to conduct a comprehensive review of representative materials. Instead, the expert engaged in credibility determinations and rejected testimony that contradicted his position. Most significantly, he failed to identify specific examples of gender stereotypic thinking or identify decisions that were affected by gender stereotypic thinking. Without evidence suggesting a tie between the specific decisions of defendant's managers and gender stereotyping, the court determined that the evidence failed to provide any relevant information helpful to the trier of fact.

Dr. Halpert's expert testimony does not suffer from the same deficiencies as the testimony in *EEOC v. Wal-Mart* or *EEOC v. Bloomberg*. Dr. Halpert provides important context for gender stereotyping and discrimination, and explains how relevant social science research may be helpful in understanding how gender stereotyping works and where it is found. Dr. Halpert's expert testimony is akin to the testimony provided in *Price Waterhouse*, *Tuli*, and *Maxwell* and defendants' motion to strike should be denied.

### B. Dr. Halpert's Scientific Methods and Conclusions are Reliable.

#### 1. The Social Science Principles Upon Which Dr. Halpert Based Her Testimony are Well-Established in Sociological Research.

The principles about gender stereotypes and how they operate are well-established in

mainstream sociological research. The Ninth Circuit, in *Dukes v. Wal-Mart*, 603 F.3d 571, 601, n.21 (9th Cir. 2010), referred to Melissa Hart & Paul M. Secunda, *A Matter of Context: Social Framework Evidence in Employment Discrimination Class Actions*, 78 Fordham L. Rev. 37, 41-55 (2009) for a description of "social framework analysis," the analysis used by Dr. Halpert herein. Hart and Secunda explain that social framework testimony can provide context and explanation for deciding factual issues and help the jury understand social and cultural norms and stereotypes, and the way in which those norms and stereotypes affect workplace opportunities. *Social Framework Evidence*, 78 Fordham L. Rev. at 41-55. The authors note that "criticisms of social framework evidence do not withstand much scrutiny." *Id*. at 51. Rather, "there is in fact a substantial agreement among scientists about the operation of cognitive processes like bias and stereotyping. Over the past few decades, researchers have conducted hundreds of studies and published hundreds of articles demonstrating the ways that decisions in a variety of contexts are affected by cognitive processes like stereotyping and bias." *Id*.

Dr. Halpert provides a detailed review of the relevant literature on the issue of gender stereotyping as part of her expert opinion. Halpert Decl., Ex. B and pgs. 3-20. Dr. Halpert herself has written and presented research on the issue of pregnancy and gender stereotypes on the workplace and has provided important contributions to this area of social science. Halpert Decl., Ex. A. pgs. 2-4.

Despite extensive peer-reviewed, scientific literature on the effects of gender stereotyping, and the widespread approval of the use of social science evidence in employment litigation, defendants cite a footnote in an article by Monahan, Walker & Mitchell, *Contextual Evidence of Gender Discrimination: The Ascendance of "Social Frameworks*," 94 Va. L. Rev. 1715, n. 84 (2008) for the proposition that social framework theory is "ill-suited for application to *individual*

cases of alleged disparate treatment."[1] Defendants' Motion to Strike (hereafter "Motion"), p. 3 (emphasis in original). However, the article's authors admit that the "idea that courts should allow the introduction of general social science research to provide context for the determination of factual issues in litigation has met with widespread judicial and academic approval." 94 Va. L. Rev. at 1748. They also admit that "social frameworks have become a common and important part of many cases…." *Id*. at 1716.

These authors nevertheless propose the categorical exclusion of social science evidence in employment discrimination cases. Their only exception would be when the expert conducted independent empirical research and a detailed analysis of individuals and workplaces at issue prior to linking the social science evidence to the specific issues. *Id*. at 1747-49. However, the social science methodology used by Dr. Halpert is more reliable than conducting a detailed original study:

> The law . . . regularly relies on findings from the accumulated body of scientifically valid, peer-reviewed literature in an area to inform the fact-finder in a particular case. In addition, the argument that contract research is the appropriate method of determining whether gender stereotyping occurred ignores several important limitations of conducting such research. One serious problem with the contract research approach is that there is no way of determining the extent to which employees' responses will be tainted by knowledge of the litigation underway, the sponsors of the survey, or the potential ramifications of their responses. It is likely that employees will try to give unbiased responses, even if they are not accurate. Moreover, research indicates that gender stereotyping often occurs outside of conscious awareness, so even if employees are completely honest, their responses may not reveal the actual occurrence of gender stereotyping. Therefore, relying on the conclusions of scientifically valid peer-reviewed social science research to make inferences about a case represents a more scientifically informed approach to assisting fact finders.

---

[1] While defendants also cite to a second footnote and second article in their Motion, the article is written by one of the authors of the first article and the footnote merely restates and cites to the first footnote. Mitchell, *Good Causes and Bad Science*, 63 Vand. L. Rev. En Banc 133, n. 9 (2003).

PAGE 9 -  **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE DECLARATION OF JANE HALPERT, PH.D.**

Jennifer S. Hunt, Eugene Borgida, Kristina M. Kelly, & Diana Burgess, T*he Scientific Status of Research on Gender Stereotyping*, in MODERN SCIENTIFIC EVIDENCE: THE LAW AND SCIENCE OF EXPERT TESTIMONY §18-2.3.4 at 393 (David L. Faigman et al. eds., 2002). More significantly, the categorical exclusion of evidence suggested by Monahan, Walker & Mitchell is contrary to the general presumption in favor of admissibility under the Federal Rules of Evidence.

The principles upon which Dr. Halpert based her expert opinion are firmly rooted in social science research, and defendants' suggestion that this evidence is not based on generally accepted science should be rejected.

### 2. Sociological Evidence is Widely Accepted as a Reliable Method of Analyzing the Effect of Stereotypes on Workplace Decision-Making.

Numerous courts have admitted sociological evidence of stereotyping in discrimination cases. Most notably, in *Price Waterhouse*, an expert social psychologist provided evidence regarding sex stereotyping, testifying that "the subjectivity of the evaluations made it likely that sharply critical remarks such as these were the product of sex stereotyping - although [the expert] admitted that she could not say with certainty whether any particular comment was the result of stereotyping." *Id*. at 236. The Supreme Court rejected the employer's dismissive attitude toward the social science field and the expert's conclusions.

The court in *Thomas v. Eastman Kodak Co.,* 183 F.3d 38, 59-60 (1st Cir. 1999) also tied the importance of research on stereotyping to employment litigation:

> The Supreme Court has long recognized that unlawful discrimination can stem from stereotypes and other types of cognitive biases, as well as from conscious animus. Indeed, discussing age discrimination in *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 123 L. Ed. 2d 338, 113 S. Ct. 1701 (1993), the Court characterized employer decisions "based in large part on stereotypes unsupported by objective fact," id. at 610-11 (*quoting EEOC v. Wyoming*, 460 U.S. 226, 231, 75 L. Ed. 2d 18, 103 S. Ct. 1054 (1983)), as "the essence of

> what Congress sought to prohibit in the ADEA," 507 U.S. at 610 (emphasis added). And the prohibition against this form of disparate treatment is not limited to the context of age discrimination. The Court has interpreted Title VII as "'prohibiting all practices in whatever form which create inequality in employment opportunity due to discrimination on the basis of race, religion, sex, or national origin,'" *County of Washington v. Gunther*, 452 U.S. 161, 180, 68 L. Ed. 2d 751, 101 S. Ct. 2242 (1981) (quoting *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 763, 47 L. Ed. 2d 444, 96 S. Ct. 1251 (1976)), and has noted that this includes "the entire spectrum of disparate treatment of men and women resulting from sex stereotypes," id. (quoting *Los Angeles Dept. of Water & Power v. Manhart*, 435 U.S. 702, 707 n.13, 55 L. Ed. 2d 657, 98 S. Ct. 1370 (1978)). Stereotypes or cognitive biases based on race are as incompatible with Title VII's mandate as stereotypes based on age or sex; here too, "the entire spectrum of disparate treatment" is prohibited.

*Id*. at 59.  The fact that stereotyping may be ingrained or subconscious does not make it less injurious than calculated discrimination.  *Id*. at 60-61.

Other courts have likewise allowed the testimony of social science experts.  See *Dukes v. Wal-Mart, Inc.*, 222 F.R.D. 189, 192 (N.D. Cal. 2004) (social framework analysis acceptable social science methodology); *Butler v. Home Depot, Inc.,* 984 F. Supp. 1257, 1265 (N.D. Cal. 1997) (social framework analysis is based on scientifically valid principles); *Stender v. Lucky Stores, Inc.,* 803 F. Supp. 259, 301-03, 327 (N.D. Cal. 1992) (sociological evidence is consistent with evidence that has been accepted by other courts and is persuasive); *Hurst v. F.W. Woolworth Co.,* 1997 U.S. Dist. LEXIS 17233, *2 (S.D.N.Y. Oct. 31, 1997) (admitting expert testimony on age stereotypes in age discrimination case); *Flavel v. Svedala Industries, Inc.,* 1994 U.S. Dist. LEXIS 19774, *1 (E.D. Wis. Oct. 25, 1994) (given the unconscious application of stereotypes in age cases, it is reasonable to allow expert testimony to explain why events may have occurred and alert jurors to possible personally held stereotypes); *Robinson v. Jacksonville Shipyards, Inc.*, 760 F. Supp. 1486, 1505 (M.D. Fla. 1991) (finding that testimony regarding stereotyping "provided a sound, credible theoretical framework"); *Jenson v. Eveleth Taconite Co.*, 824 F. Supp. 847, 864, 880-83 (D. Minn. 1993) (admitting expert testimony on sex stereotyping and describing it as

providing "a sound credible theoretical framework").

Of course, some courts have excluded social science testimony. In these situations, as in *Bloomberg* and *Wal-Mart*, discussed above, the exclusion is based on the specific facts and the expert's failure to provide a pertinent, scientifically valid opinion. See, *e.g.*, *Chadwick v. Wellpoint, Inc.*, 550 F. Supp. 2d 140, 147 (D. Me. 2008). Plaintiff's counsel is not aware of any case standing for the categorical exclusion of relevant, reliable social science evidence.

### 3. Dr. Halpert's Methodology is Valid.

In assessing the reliability of an expert's testimony, the court must assess "whether the reasoning or methodology underlying the testimony is scientifically valid" and "whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert,* 509 U.S. at 592-93. "Reliable testimony must be grounded 'in the methods and procedures of science,' and signify knowledge beyond 'subjective belief or unsupported speculation.'" *McClellan*, 710 F. Supp. 2d at 1099 (*quoting Daubert*, 509 U.S. at 590). "Our task, then, is to analyze not what the experts say, but what basis they have for saying it." *Daubert II*, 43 F.3d at 1316.

"Though the court must ensure that an expert's opinion in supported by sufficient data and reliable methodology, the inquiry is 'a flexible one,' depending on 'the particular circumstances of the particular case at issue.'" *Id*. at 1100 (*quoting Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)). While there are no specific factors that must be met to establish an expert opinion's reliability, the court "'must find that it is properly grounded, well-reasoned, and not speculative.'" *United Nat'l Maint., Inc. v. San Diego Convention Ctr. Corp.*, 2010 U.S. Dist. LEXIS 79541, *5 (S.D. Cal. Aug. 2, 2010) (quoting Advisory Committee Notes to Rule 702, 2000 Amendments). The proffering party has the burden to show reliability by a preponderance of the evidence. *Id*.

Dr. Halpert's methodology is part of the sound, accepted process of social scientists. An expert's testimony is reliable when the expert reliably applies social science theory to the facts of the case to determine if stereotyping or discrimination more likely than not occurred. *Bloomberg*, 2010 U.S. Dist. LEXIS 92511 at *43. Expert testimony about how and when discrimination typically occurs, and whether the allegations in the instant matter are consistent with observed patterns is scientifically valid. *Tuli*, 592 F. Supp. 2d at 215-16. Dr. Halpert applied applicable research regarding typical stereotyping and discrimination behavior and determined that "sex stereotyping may well have been operating as one factor in this situation" and that "[t]he behaviors alleged to have occurred are consistent with the factors associated with stereotypical attitudes, prejudicial judgments, and discriminatory behavior." Halpert Decl. ¶¶ 46 and 52.

In reaching her conclusions, Dr. Halpert engaged in an analysis similar to the expert social psychologist in *Price Waterhouse*. Dr. Halpert reviewed deposition testimony of the principal decision maker, Debi Lorence, and Ms. Merrill, documentary evidence, and research. Dr. Susan Fiske, the expert in *Price Waterhouse*, "based her opinion on a review of the submitted comments, explaining that it was commonly accepted practice for social psychologists to reach this kind of conclusion without having met any of the people involved in the decision-making process." *Price Waterhouse*, 490 U.S. at 236. *See also Jenson*, 824 F. Supp. at 881 (admitting expert testimony regarding sex stereotypes over objection where expert reviewed transcripts, observed trial proceedings and interviewed named plaintiffs for one hour); *Arnold v. Cargill*, 2006 U.S. Dist. LEXIS 41555, *18-21 (D. Minn. June 20, 2006) (expert's review of manager depositions and exhibits deemed reliable); *Robinson,* 760 F. Supp. at 1503 (expert testimony based on review of depositions, responses to requests for admissions, and EEO-1 reports).

### C. Dr. Halpert's Conclusions are Admissible Under Rule 702.

After a comprehensive review of the research and studies relevant to the gender stereotyping and discrimination claims raised in this case, Dr. Halpert opined that gender stereotyping and the related discriminatory behaviors may have occurred. Halpert Decl. ¶¶ 46 and 52. Because the opinion meets the dual standard of reliability and relevance, it is admissible. Defendants nevertheless argue that Dr. Halpert's testimony must be disregarded because, as Dr. Halpert acknowledges, she cannot conclude with certainty that intentional discrimination occurred in this case. Halpert Decl. ¶ 46. In so arguing, defendants point to Dr. Halpert's acknowledgement that "stereotyping can be an automatic process," Halpert Decl. ¶ 12, and extrapolate that Dr. Halpert, therefore, cannot conclusively point to evidence of intentional discrimination.

*Daubert* does not require certainty, however. This Court faced a similar challenge regarding the admissibility of an expert's report in *McClellan*, 710 F. Supp. 2d at 1101. In *McClellan*, plaintiffs sought to introduce expert testimony that, to a reasonable degree of medical probability, continuous infusion could cause chondrolysis. Defendants asserted that the expert opinions were merely unreliable products of litigation, without scientific validity, and that the opinions were unreliable absent conclusive evidence of causation. *Id.* at 1101. According to the court, "[t]aking defendants' argument to its logical conclusion, defendants would have plaintiffs prove causation to a medical certainty before expert testimony could be admitted." *Id.* This was "wholly inconsistent with *Daubert* and the fundamental premise of *Rule 702*." *Id.* The Court acknowledged that Rule 702 and *Daubert* allow for scientific uncertainty: "'It would be unreasonable to conclude that the subject of scientific testimony must be 'known' to a certainty; arguably, there are no certainties in science.'" *Id.* (quoting *Daubert*, 509 U.S. at 590).

The *McClellan* holding also is consistent with similar decisions in the discrimination context. For example, the *Price Waterhouse* plaintiff was permitted to rely on expert testimony even though the expert could not say with certainly whether any particular comment was the result of stereotyping. *Price Waterhouse*, 490 U.S. at 236. Additionally, in *Tuli*, defendants challenged expert testimony on the issue of gender stereotyping, claiming that the plaintiff's expert, Professor Glick, failed to opine on whether intentional discrimination occurred. The court found this was a strength, not a weakness:

> He does not purport to determine the credibility of the allegations or give an ultimate conclusion about whether discrimination occurred. The most his testimony does is describe how stereotyping and discrimination operate – in what contexts, in what fashion – based on empirical research and note that the statements and treatment described by Dr. Tuli are consistent with that research.
>
> Professor Glick brings the insights of established scientific inquiry and social framework analysis, as to which he is an expert, to bear on the facts of this case. It is an area that the jury may well not have the common knowledge. But professor Glick does so it way that has scientific validity; he cannot say whether a given act or word was discriminatory; he can only show the settings in which discrimination typically occurs and opine on whether the allegations in the case at bar are consistent with observed patters (sic). He allows the jury to make the final decision…

*Tuli*, 592 F. Supp. 2d at 215-16. As in *Tuli,* Dr. Halpert applies her extensive knowledge of social science to the specific facts and opines that the behaviors are consistent with stereotyped attitudes and discriminatory behaviors. Halpert Decl. ¶¶ 46 and 52. This is sufficient to demonstrate relevance and admissibility despite the lack of a conclusive finding on intentional discrimination.

### D. Defendants' Criticisms of Dr. Halpert's Testimony Attack the Weight Given Her Testimony, but Do Not Support Their Claim that the Testimony is Unduly Prejudicial.

Defendants argue that Dr. Halpert's testimony should be stricken because she suggests that, pursuant to established social science theory, defendants may have engaged in behaviors consistent with gender-based stereotyping and discrimination. This testimony, defendants' assert,

would work "irreparable prejudice on defendants." Motion, p. 6. Thus, their argument seems to be that the testimony is inadmissible because it is not favorable, an obviously nonsensical suggestion given the adversarial nature of litigation.

To support their claim that Dr. Halpert's expert opinion is unfairly prejudicial, defendants point to the fact that Dr. Halpert had "zero personal knowledge on the subject prior to this litigation" and therefore her expert opinion must contain only inadmissible conclusions about "what gender bias usually looks like." *Id.*

Defendants' further assert that Dr. Halpert's testimony must be excluded because it would be offered under "the guise of 'science'" and with the intent to confuse with "arcane analytical methods" and confusing terms. *Id*. This patronizing characterization is not unlike the challenge the plaintiff faced in *Price Waterhouse*. This characterization also disregards the years of extensive research that supports the social science theories (and calls into question defendants' argument that sociological trends and data are so well known as to provide no value to the trier of fact).

In support of their argument that this court should exclude Dr. Halpert's expert testimony as highly prejudicial, defendants cite *Ray*, 664 N.W. 2d 366, which found the admission of social science testimony to be reversible error. However, as explained above, that case is wholly distinguishable, since the decision turned on an interpretation of the Minnesota Rules of Evidence, Minnesota Supreme Court precedent and the now abandoned *Frye* standard, *Frye*, 293 F. at 1014.

Defendants also point to the decisions in *Wal-Mart Stores,* 2010 U.S. Dist. LEXIS 13192 and *Bloomberg*, 2010 U.S. Dist. LEXIS 92511 for the proposition that social framework testimony should be excluded as highly prejudicial and because it can lead to confusion and

suggest to jurors that they are incapable of determining whether discrimination occurred. In fact, neither decision makes so bold a holding. Both courts recognized the importance of social science when the Rule 702 standards for reliability and relevance are established. *See* discussion, *supra*, part IIA.

Defendants' critiques go to the weight of Dr. Halpert's testimony. Questions regarding Dr. Halpert's experience as an expert, methodology and terminology are proper issues for impeachment, and defendants can raise any concerns during a vigorous cross examination. *Maxwell*, No. CV-09-173-RMP at p. 7. As detailed above, Dr. Halpert's testimony is relevant to the issues at hand and based on reliable methodologies. It is not unduly prejudicial, but rather provides important context and helpful information.

### III.   CONCLUSION.

Ms. Merrill respectfully urges this Court to deny defendants' Motion to Strike the Declaration of Jane Halpert, Ph. D.

DATED this 10th day of February, 2011.

> BUCHANAN ANGELI ALTSCHUL & SULLIVAN LLP
>
> By:  */s/ Dana L. Sullivan*
>  Dana L. Sullivan, OSB No. 944834
>  Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

  I hereby certify that on the 10th day of February, 2011, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Karen Vickers
Mersereau Shannon, LLP
One SW Columbia Street
Suite 1600
Portland, OR 97258-2089
kvickers@mershanlaw.com

Attorneys for Defendants

  DATED:  February 10, 2011

                BUCHANAN ANGELI ALTSCHUL &
                SULLIVAN LLP

                _/s/ Dana L. Sullivan_
                Dana L. Sullivan, OSB No. 94483
                Telephone:  (503) 974-5023

                Attorneys for Plaintiffs