**PETER R. MERSEREAU,** OSB No. 73202
pmersereau@mershanlaw.com
**KAREN M. VICKERS,** OSB No. 913810
kvickers@mershanlaw.com
MERSEREAU SHANNON LLP
One SW Columbia Street, Suite 1600
Portland, Oregon 97258-2089
Telephone: 503.226.6400
Facsimile: 503.226.0383

Of Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| GRACIA H. MERRILL,<br><br>    Plaintiff,<br><br>  v.<br><br>M.I.T.C.H. CHARTER SCHOOL TIGARD<br>and DEBI LORENCE,<br><br>    Defendants. | Case No. 3:10-cv-00219-HA<br><br>DEFENDANTS' REPLY<br>MEMORANDUM IN FURTHER<br>SUPPORT OF MOTION TO STRIKE<br>DECLARATION OF JANE HALPERT,<br>PH.D. |

Defendants hereby submit this reply memorandum of law in further support of

their Motion to Strike the Declaration of Jane Halpert, Ph.D. ("Halpert").

## I. ABSENCE OF "RELIABLE PRINCIPLES AND METHODS" – FRE 702

The fact that Jane Halpert's own mentors, whose work she cites, have specifically

disapproved the use of their "social framework" theory in <u>individual</u> cases of alleged

disparate treatment – such as the present case – completely discredits Halpert's evidence.

Plaintiff tries to brush off this problem lightly (Plaintiff's Opposition to Motion to Strike,

p. 8), but this court should not.

PAGE 1 - DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO STRIKE<br>    DECLARATION OF JANE HALPERT, PH.D.

MERSEREAU  SHANNON LLP
L A W Y E R S
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

Rule 702 of the Federal Rules of Evidence requires that the testimony of experts must be "the product of reliable principles and methods." The expert's declaration that plaintiff has proffered in the present case is based on a theory of the social psychology known as "social framework analysis," the most prominent originators of which are Monahan & Walker, as Halpert herself acknowledges. Halpert Declaration, ¶ 5.

But Monahan & Walker have made it clear that their methodology is not scientifically reliable for use in individual cases: "<u>We are aware of no peer-reviewed journal</u> within the social sciences," Monahan and Walker write, "<u>that treats an approach akin to social framework analysis as a valid and reliable method for reaching descriptive or causal conclusions about individual cases</u>." *Contextual Evidence of Gender Discrimination: The Ascendance of "Social Frameworks,"* 94 Va. L. Rev. 1715 at footnote 84 (2008). Moreover, their colleague, Gregory Mitchell, in an article aptly titled *"Good Causes and Bad Science,"* writes that he, Monahan, and Walker have concluded that "case-specific opinions" based on social framework analysis "<u>violate basic rules of expert evidence and are scientifically unreliable</u>." 63 Vand. L. Rev. En Banc 133 (2010).

Again, these are not just *any* authors. Rather, they are the foremost scholars in Halpert's field – scholars whose work she cites. Therefore, Halpert's declaration is not "the product of reliable principles and methods" and should be stricken. FRE 702.

## II.    *PRICE WATERHOUSE* DOES NOT SUPPORT PLAINTIFF'S ARGUMENT

Plaintiff cites *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), and implies that the Supreme Court has approved of "social framework" expert testimony. It has not.

PAGE 2 -    DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO STRIKE DECLARATION OF JANE HALPERT, PH.D.

MERSEREAU SHANNON LLP
L A W Y E R S
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

In *Price Waterhouse*, the defendant had chosen <u>not</u> to object to the expert testimony

about stereotyping, so the question of its admissibility under FRE 702 was simply not

before the Court.  *Id.*, 490 U.S. at 255.

Moreover, the plurality opinion in *Price Waterhouse* observed that, because there

was so much direct evidence, expert testimony was unnecessary to establish gender bias.

Thus, Justice Brennan, writing for the plurality, described the expert's evidence as merely

"the icing on [the plaintiff's] cake."  "<u>It takes no special training</u>," Justice Brennan wrote,

"<u>to discern sex stereotyping</u> in a description of an aggressive female employee as

requiring 'a course at charm school'" or in a remark that the female employee's "flawed

'interpersonal skills' can be corrected by a soft-hued suit or a new shade of lipstick."  *Id.*,

490 U.S. at 255-56. [1]

Because the plaintiff in the present case has not produced a shred of direct

evidence, this case is not at all like *Price Waterhouse*.  Therefore, far from being merely

"the icing on the cake," Halpert's testimony would amount to whatever "cake" there is.

Or, to be perfectly consistent with Justice Brennan's metaphor, the expert testimony here

would be "icing" alone – with no "cake" at all.  *Price Waterhouse*, 490 U.S. at 256.

The Supreme Court has never approved of "social framework" expert testimony

---

[1] Justice O'Connor, concurring in the judgment, would have held that the expert testimony, "standing alone, would not justify shifting the burden of persuasion to the employer."  *Id.*, 490 U.S. at 277.   Justice Kennedy, dissenting and joined by two other justices, questioned how a psychologist could discern stereotyping from comments that were gender neutral, like "overbearing" and "abrasive," without "any knowledge of the comments' basis in reality and without having met the speaker or subject."  *Id.*, 490 U.S. at 294, at footnote 5.

MERSEREAU  SHANNON LLP
L A W Y E R S
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

in any case of alleged disparate treatment.  As discussed in defendant's opening memorandum on this issue, the Court recently has granted certiorari to review the use of such expert testimony for purposes of determining commonality in the certification of a 1.5 million member class action.  *Dukes v. Wal-Mart Stores, Inc.*, 603 F3d 571, 601-3 (9th Cir. 2010), *cert. granted*, 131 S. Ct. 795 (December 6, 2010).  But the issues addressed by the court in certifying a large class action are much different from the question of whether or not discriminatory intent motivated a single individual employment decision by an employer with fewer than 15 employees, such as the present case.  There is not one appellate case permitting "social framework" expert testimony in such a context.

### III.    NO RELIABLE CASE LAW SUPPORTS PLAINTIFF'S ARGUMENTS.

Plaintiff cites nine cases other than *Price Waterhouse* and *Dukes*.  All are from federal district courts, and four of those cases are – like *Dukes* – also class actions. *Butler v. Home Depot, Inc.,* 984 F. Supp. 1257 (N.D. Cal. 1997);  *Stender v. Lucky Stores, Inc.,* 803 F. Supp. 259 (N.D. Cal. 1992); *Jenson v. Eveleth Taconite Co.*, 824 F. Supp. 847 (D. Minn. 1993); and *Hnot v. Willis Group Holdings LTD*, 2007 WL 1599154 (S.D.N.Y. 2007).  A fifth case cited by plaintiff involved 16 "similarly situated" plaintiffs who claimed age discrimination, and the court admitted the expert testimony to show a "pattern or practice of age discrimination."  *Flavel v. Svedala Industries, Inc.*, 875 F. Supp. 550, 558 (E.D.Wis.1994).   Because these cases involve proof of a pattern of discrimination common to the entire plaintiff class, they are wholly unlike the present case – an individual instance of alleged disparate treatment.

MERSEREAU  SHANNON LLP
L A W Y E R S
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

Another case cited by plaintiff, *Robinson v. Jacksonville Shipyards, Inc*., 760 F. Supp. 1486 (M.D.Fla.1991), was a trial to the court, not to a jury, so the danger of confusion and prejudice resulting from the admission of expert testimony was minimal. More to the point, while the judge in *Robinson* admitted testimony about stereotyping, he rejected expert testimony regarding the "social context" of alleged sexual harassment on the ground that it lacked "a sound analytical basis." *Id*., 760 F. Supp. 1576.

That leaves plaintiff relying on only two federal district court decisions that can be found on Westlaw or Lexis. *Hurst v. F.W. Woolworth Co.,* 1997 WL 685341 (S.D.N.Y. 1997) and *Tuli v. Brigham & Women's Hospital, Inc*., 592 F. Supp. 2d 208 (D. Mass. 2009). The other case plaintiff relies on, Maxwell v. Virtual Education Software (E.D.Wash. 2010), was an unreported order. None of these cases has received appellate review, and they are of little value as precedent. Moreover, the judge in the *Tuli* case allowed expert testimony from a professor of psychology who, like Professor Halpert, relied on the "social framework" theory of Monahan & Walker, apparently unaware that those scholars had, only months before, published an article stating that their theory was not "a valid and reliable method for reaching descriptive or causal conclusions about individual cases." *See* 94 Va. L. Rev. 1715, supra, at footnote 84. (Emphasis added.)

> Professor Glick indicates that this phrase [*i.e.*, "social frameworks"] was coined by Laurens Walker and John Monahan to describe their work. *See* Laurens Walker & John Monahan, *Social Frameworks: A New Use of Social Science in Law*, 73 Va. L. Rev. 559 (1987).

*Tuli*, 592 F. Supp. 2d at 210 footnote 2.

MERSEREAU SHANNON LLP
L A W Y E R S
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

Against these three district court cases where expert testimony similar to that proffered by plaintiff was admitted, there are at least one appellate case and two district court cases specifically ruling that such testimony by psychologists is inadmissible. These cases are the better reasoned authorities, as discussed below.

## IV.   LEADING CASES WHERE "SOCIAL FRAMEWORK" EVIDENCE WAS EXCLUDED.

Plaintiff tries to distinguish *Ray v. Miller Meester Advertising, Inc.*, 664 N.W.2d 355, 366 (Minn App 2003) by pointing out that Minnesota adheres to the *Frye-Mack* evidentiary standard for evaluating expert testimony.  That standard was, of course, superseded by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  But plaintiff omits to mention that FRE 702 requires, as part of the court's gatekeeping function, that expert testimony be "the product of reliable principles and methods." Halpert's testimony fails that test, as shown above.

More importantly still, the *Daubert* standard never even comes into play if the subject of the proffered expert testimony would not "assist the trier of fact to understand the evidence or to determine a fact in issue."  FRE 702.  Indeed, that was the central basis of the appellate court's decision in *Ray v. Miller Meester*.

> [The expert] purported to give the fact-finders a framework for thinking about gender prejudice here so that they might, if they desired, conclude that Ray's termination was the product of gender discrimination.  But this testimony was not sufficiently helpful to the fact-finders to satisfy rule 702 requirements.  The fact-finders heard evidence that Ray was treated differently from creative department male employees and that some pejorative gender statements were made about her.  [The expert's] testimony is hardly the type of evidence without which laypersons are incapable of forming a correct judgment.  There is nothing in this case that

MERSEREAU  SHANNON LLP
L A W Y E R S
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

> shows directly or inferentially some insidious scheme or pattern of gender discrimination that can be uncovered only with the help of expert analysis, such as a statistical demonstration.  Rather, this case is straightforward and within the realm of ordinary understanding and comprehension.  Thus, [the expert's] testimony did not qualify for admission as expert testimony, and the court abused its discretion in allowing it.

*Ray v. Miller Meester*, supra, 664 N.W.2d at 366.  (Emphasis added.)

The above ground for excluding "social framework" testimony in individual cases of alleged discrimination is equally compelling in the present case.  Testimony about the complex abstractions used by academicians (*e.g.*, "schemas," "prototypes," "exemplars," and "dissociation") would not "assist the trier of fact" in any meaningful way.  Recently, the Southern District of New York agreed with this view, explaining as follows:

> [T]he Court agrees with the Minnesota Court of Appeals' reasoning in *Ray v. Miller Meester Advertising, Inc*., 664 N.W.2d 355 (Minn.Ct.App.2003) wherein the court found that the trial court abused its discretion by admitting [the expert's] testimony because the opinion was unhelpful to the jury.  The court noted that "[i]nformation about and commentary on gender issues is so abundant in our society that it has become a common stereotype that women receive disparate and often unfairly discriminatory treatment in the workplace." *Id*. at 365-66.  In addition, the court in *Ray* observed that "[g]ender stereotypes are the stuff of countless television situation comedies and are the focus of numerous media treatments on nearly a daily basis.  It is unarguable that virtually all adults in our society know about gender stereotypes." *Id*. at 366.  The Court agrees.  Upon reviewing [the expert's] report and deposition, it becomes apparent that Bloomberg demands that its employees work hard and remain loyal to the company.  The jury will have the benefit of hearing testimony from claimants, Bloomberg managers, and other Bloomberg employees and can determine based on the evidence, and with the benefit of their common sense and experience, whether the claimants suffered discrimination based on their gender/pregnancy.  Accordingly, because the Court finds [the expert's] proposed expert testimony is the result of an unreliable methodology and will not assist the trier of fact, his testimony is inadmissible pursuant to Fed. R. Evid. 702.

MERSEREAU SHANNON LLP
L A W Y E R S
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

*E.E.O.C. v. Bloomberg L.P.*, 2010 WL 3466370, 17 (S.D.N.Y. 2010).  Plaintiff's attempts to distinguish the *Bloomberg* case are to no avail.  The court, as shown above, concurred with *Ray v. Miller Meester* that "social framework" testimony, when used in an effort to prove intentional discrimination, fails the threshold "helpfulness" test of FRE 702.

Both *Ray* and *Bloomberg* also recognize the potential for confusion and prejudice posed by expert testimony of this kind, and *Bloomberg* cites with approval the Southern District of Kentucky, which recently explained this danger as follows.

> [The expert's] <u>testimony is more prejudicial than probative and presents a risk of confusion</u>.  He indicates that gender stereotyping exists in all facets of life.  Thus, <u>the jury may well presume such stereotyping existed</u> at Wal-Mart and require Wal-Mart to provide evidence that it did not exist at the distribution center.  The burden, however, is on the plaintiff to prove that intentional discrimination occurred at this particular distribution center, not just that gender stereotyping or intentional discrimination is prevalent in the world.  [The expert] does not opine on whether intentional discrimination occurred at the distribution center.

*E.E.O.C. v. Wal-Mart Stores, Inc.*, 2010 WL 583681, 4 (E.D.Ky. 2010).  (Emphasis added.)  Halpert's declaration suffers from the same deficiencies.  Because she cannot read minds, she would testify only that "<u>[i]t appears that stereotyping</u> and its consequent discriminatory behavior <u>could well have been operating</u>" here.  Halpert Declaration, ¶ 52.  Halpert does *not* opine that intentional discrimination *was* a substantial motivating factor in plaintiff's discharge – only that "stereotyping…*could well have been* operating."  Whatever minimal assistance such testimony might give the jury would be far outweighed by the very real danger of confusion and prejudice.  FRE 403.

MERSEREAU  SHANNON LLP
L A W Y E R S
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

Thus, the expert declaration upon which plaintiff bases most of her case is flawed on three major grounds.  First, it does not address a subject where "scientific, technical, or other specialized knowledge will assist" the jury to decide any fact in issue.  FRE 702. Second, it is not the product of "reliable principles and methods."  FRE 702.  And third, whatever probative value it might have is greatly outweighed by "the danger of unfair prejudice" or "confusion of the issues."  FRE 403.

## CONCLUSION

Defendants respectfully submit that the Declaration of Jane Halpert, Ph.D., should be ruled inadmissible as expert testimony.  Defendants' Motion to Strike should be granted.

DATED: February 18, 2011.

MERSEREAU SHANNON LLP

_____/s/ Karen M. Vickers_____
**PETER R. MERSEREAU, OSB No. 73202**
pmersereau@mershanlaw.com
**KAREN M. VICKERS, OSB No. 913810**
kvickers@mershanlaw.com
503.226.6400
Of Attorneys for Defendants

MERSEREAU  SHANNON LLP
L A W Y E R S
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400