FILED'11 APR 04 14:20USDC-ORP

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| GRACIA H. MERRILL, | Civil No. 10-219-HA |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| M.I.T.C.H. CHARTER SCHOOL TIGARD and DEBI LORENCE, | |
| Defendants. | |

HAGGERTY, District Judge:

Plaintiff filed this action against her former employer alleging claims of discrimination, retaliation, promissory estoppel, breach of contract, and unpaid wages. Defendants move for summary judgment on all claims in plaintiff's First Amended Complaint. Defendants also move to strike the declaration by Jane Halpert, Ph.D. The court has determined that oral argument on this motion is unnecessary. For the following reasons, defendants' Motion for Summary Judgment [18] is GRANTED IN PART AND DENIED IN PART, and Motion to Strike [34] is DENIED.

1 - OPINION AND ORDER

## BACKGROUND

The following facts are taken from the parties' Concise Statements of Fact, declarations, and exhibits. They are undisputed unless otherwise noted and are stated in the light most favorable to plaintiff, the non-moving party.

Defendant M.I.T.C.H. Charter School Tigard (MITCH) provides kindergarten through fifth grade education in Tigard, Oregon. Plaintiff was hired by MITCH to teach fifth grade for the 2008-2009 school year. Plaintiff's employment agreement with MITCH did not provide for any paid maternity leave. Plaintiff enjoyed her first year teaching at MITCH, and developed a good relationship with her students, fellow teachers, and the school director, defendant Debi Lorence (Lorence).

In May 2009, plaintiff learned that she was pregnant. Plaintiff notified staff members at MITCH about her pregnancy in early May, after her husband bid on a baby blanket at the school auction. Plaintiff was excited, but she was concerned about the success of her pregnancy because she had experienced several miscarriages.

Plaintiff suffered a miscarriage scare on May 13, 2009 while at work. Plaintiff asked Lorence to cover her class, and left work to see her doctor. Lorence later described plaintiff's conduct as "unprofessional."

Although an ultrasound revealed that her baby was not in any distress, plaintiff became increasingly concerned about her pregnancy. Lorence testified that "there were times [when plaintiff] seemed more focused on her pregnancy than on her work." Plaintiff took more time off work, and her doctor restricted her from lifting heavy objects. Lorence allegedly tried to persuade plaintiff to job share or cut back to a part-time position for the 2009-2010 school year, but plaintiff stated that she wanted to keep her full-time schedule.

2 - OPINION AND ORDER

Plaintiff met with Lorence in June 2009 to discuss plaintiff's performance, her 2009-2010 contract, and maternity leave. Plaintiff received a positive evaluation. Lorence allegedly advised plaintiff that she could receive six weeks of paid maternity leave, with the option of taking up to twelve weeks of unpaid leave over one year. Lorence allegedly suggested that plaintiff take twelve weeks of leave because her baby might have medical problems, and urged plaintiff to consider a job-share. Plaintiff contends that she told Lorence that she preferred taking six weeks of paid leave, and would return to work afterward. During the meeting, plaintiff signed an employment agreement for the 2009-2010 school year that did not mention paid maternity leave.

During the summer, Lorence communicated with plaintiff via e-mail and expressed her support for plaintiff's pregnancy. In July 2009, plaintiff was notified by a former supervisor about a job with Portland Public Schools, but plaintiff took no steps to apply for the position. Plaintiff allegedly did not pursue other job opportunities in reliance on the promise of paid maternity leave.

During July 2009, plaintiff attended an agricultural training for MITCH's teachers at Old McDonald's Farm in Corbett, Oregon. Plaintiff requested this training instead of the usual agricultural training at Oregon State University because plaintiff's doctor had restricted her travel during her pregnancy. While on the farm, plaintiff was accidentally shocked by an electrical wire and worried about the health of her baby. Plaintiff left the training to seek medical attention. Even though no harm was detected, plaintiff's doctor advised plaintiff not to return to work that day due to the expected warm weather. Lorence questioned plaintiff's conduct because the shock was low voltage, and plaintiff reportedly started screaming.

3 - OPINION AND ORDER

In August 2009, Lorence e-mailed plaintiff to schedule a meeting to discuss several matters, including "the family leave act." Lorence did not intend to fire plaintiff at this point. Plaintiff and Lorence met on August 28, 2009.

During the meeting, plaintiff requested to take her six-week maternity leave following winter break. Lorence provided plaintiff with a copy of the staff handbook and plaintiff's employment agreement. Lorence allegedly told plaintiff that she would be lucky to have enough paid leave to cover her doctor visits. Plaintiff responded: "what are you talking about? You told me in June that I would be receiving six weeks paid maternity leave. You lied to me. You shot me in the foot." Sullivan Decl., Ex. A at 40. Lorence disputes making promises to plaintiff, and asserts that she had advised plaintiff that she planned to consider the issue over the summer. Plaintiff became overcome with nausea, vomited in the bathroom, and told Lorence that she was too ill to continue the meeting.

Following the meeting, plaintiff wrote an e-mail to Lorence expressing her frustration and reiterating her belief that she was promised six weeks of paid maternity leave. Plaintiff told Lorence that she relied on the promise, refused a job offer that would have given her twelve weeks of paid maternity leave, and felt betrayed by Lorence. She said: "Go to the board and fix this. Get me what you told me was going to happen. I know this can be done and we can work this out if you fight for me." Plaintiff also sent Lorence a text message the next day that said "you lied to me."

Over the weekend, plaintiff described her meeting with Lorence to her husband, her mother-in-law, and her sister-in-law. Lorence also discussed the meeting and plaintiff's behavior with several board members. The Board reviewed the e-mail and text message that plaintiff sent to Lorence.

4 - OPINION AND ORDER

On Monday, August 31, 2009, MITCH's Board Chair Shana Hildreth met with plaintiff and notified her that MITCH had terminated her employment. Hildreth did not provide plaintiff with specific reasons for her termination. The Board later ratified this decision at its meeting on September 15, 2009. Lorence and Hildreth sent plaintiff a letter one week later explaining the reasons for her termination. The letter went through several drafts before it was sent to plaintiff.

Plaintiff filed this action on February 26, 2010, based on MITCH's failure to provide plaintiff with the allegedly promised paid maternity leave, and plaintiff's belief that Lorence discriminated and retaliated against her because of choices she made as a mother and teacher.

**STANDARDS**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On summary judgment, the court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact for trial, but it need not disprove the other party's case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party meets its burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing that there is a genuine dispute for trial. *Id.* at 248-49. All reasonable doubt as to the existence of a genuine factual dispute should be resolved against the moving party. *MetroPCS, Inc. v. City & County of San Francisco*, 400 F.3d 715, 720 (9th Cir. 2005) (citation omitted).

This court is also mindful of the Ninth Circuit's high standard for granting summary judgment in employment discrimination cases. *See Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996).

## DISCUSSION

Defendants move for summary judgment on all eight claims in plaintiff's First Amended Complaint. Plaintiff has conceded summary judgment on her Third Claim for Relief against Lorence because she is not the proper defendant for that claim. Defendants' remaining arguments will be addressed in turn. Defendants also move to strike the declaration by Jane Halpert, Ph.D. filed in support of plaintiff's opposition to defendants' motion for summary judgment.

### 1.    Motion to Strike

Doctor Halpert is a social psychologist retained by plaintiff to "provide a context for gender stereotyping applicable to the facts of this case." Pl.'s Opp. to Defs.' Mot. to Strike at 1. Defendants contend that the evidence is not helpful to the jury, is not based on generally accepted science, and is unduly prejudicial. Defendants do not dispute Dr. Halpert's credentials.

An expert witness may provide opinion testimony if it is based on "sufficient facts or data" and "is the product of reliable principles and methods." Fed. R. Evid. 702. To determine whether expert testimony is admissible, the court must consider "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993). This inquiry ensures that the expert's testimony rests on a reliable foundation and is relevant to the issues at hand. *Id.* at 594-95. The *Daubert* relevance standard is liberal. *Id.* at 587-88.

District courts have not consistently addressed the relevance inquiry for expert testimony from social psychologists. *See, e.g., EEOC v. Wal-Mart Stores, Inc.*, No. 6:01-CV-339-KKC,

6 - OPINION AND ORDER

2010 WL 583681, at *3-4 (E.D. Ky. Feb. 16, 2010) (excluding social psychologist's testimony because the expert pointed to no evidence of intentional actions based on gender stereotyping at the specific facility at issue, opined only that gender stereotyping may have occurred, and the testimony could have confused the jury regarding the burden of proof); *Tuli v. Brigham & Women's Hosp., Inc.*, 592 F. Supp. 2d 208, 214-15 (D. Mass. 2009) (admitting social psychologist's testimony that did not purport to determine whether discrimination occurred under the specific facts of the case, and the testimony was based on testing and studies); *EEOC v. Morgan Stanley & Co.*, 324 F. Supp. 2d 451, 461 (S.D.N.Y. 2004) (admitting social psychologist's testimony about how gender stereotypes may have affected decisions at the defendant's company); *Butler v. Home Depot, Inc.*, 984 F. Supp. 1257, 1262-64 (N.D. Cal. 1997) (admitting testimony, and stating that evidence of stereotyped remarks constitutes evidence that gender played a part in an adverse employment decision). This court must independently decide whether this "particular expert had sufficient specialized knowledge to assist the jurors 'in deciding the particular issues in the case.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999).

After reviewing the evidence, this court finds Dr. Halpert's testimony to be relevant and potentially helpful to the jury. Doctor Halpert provides a context within which the jury can evaluate the actions or statements made by plaintiff and Lorence. She opines that based on the record, gender stereotyping may have been a factor in the decision to terminate plaintiff. Halpert Decl. at 22-24. To form her opinion, Dr. Halpert reviewed the pleadings, videotaped depositions, deposition transcripts, and other documentary evidence in this case. *Id.* at 3. Her testimony cannot be excluded as irrelevant based on a lack of familiarity with the record. *See Chadwick v. Wellpoint, Inc.*, 561 F.3d 38, 48-49 (1st Cir. 2009) (affirming the district court's exclusion of the

7 - OPINION AND ORDER

social psychologist's testimony where the expert sought to testify to what the plaintiff's

supervisor meant when she used specific words, but the expert had no knowledge of the

supervisor's background and had not read the supervisor's deposition). Because Dr. Halpert's

testimony logically advances a material aspect of plaintiff's case, it meets the relevance threshold.

*See Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995).

Defendants also contend that Dr. Halpert's methodology is unreliable because a recent

article by Dr. Halpert's contemporaries—John Monahan, Laurens Walker, and Gregory

Mitchell—questions the use of the social framework theory in courtrooms and non-class action

suits. Defs.' Mot. to Strike at 3-4 (citing John Monahan, Laurens Walker & Gregory Mitchell,

*Contextual Evidence of Gender Discrimination: The Ascendance of "Social Frameworks"*, 94

Va. L. Rev. 1715 (2008)).

In the article, the authors explain that while they believe the fact-finder should draw any

inferences from the research with a court's instructions, other social psychologists believe that

experts should educate the fact-finder and assist in making the causal link between the conditions

of stereotyping and the specific case. *See* Monahan, at 1746 n.84. The authors also explain that

no scientific authority treats "social framework analysis as a valid and reliable method for

reaching descriptive or causal conclusions about individual cases. Indeed, it appears that social

framework analysis exists solely as a litigation method, like much expert testimony within the

domain of forensics, such as fingerprint and handwriting matches." *Id.*

Despite questions raised by the article, the existence of a disagreement among experts in

the field does not render Dr. Halpert's testimony unreliable. Disputed expert testimony remains

reliable as long as "it falls within 'the range where experts might reasonably differ, and where the

jury must decide among the conflicting views.'" *See S.M. v. J.K.*, 262 F.3d 914, 921-22 (9th Cir.

8 - OPINION AND ORDER

2001) (citations omitted).  This court finds that Dr. Halpert's testimony falls within the range of reasonable expert opinion.

Moreover, in the sole case cited by defendants in which the court excluded a social psychologist's testimony on reliability grounds, the court did so because the expert solely analyzed material provided and selected by the plaintiff, and the expert admitted that he did not employ any specific methodology.  *EEOC v. Bloomberg L.P.*, No. 07 Civ. 8383(LAP), 2010 WL 3466370, at *14-15 (S.D.N.Y. Aug. 31, 2010).

The Ninth Circuit recently rejected a party's challenge to the reliability of expert testimony from a social psychologist regarding gender stereotyping.  *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 602 (9th Cir. 2010).  Although the court was applying a lower *Daubert* standard at the class certification stage, the court noted that testimony and properly analyzed social science data from social psychologists have often been considered by courts.  *Id.* (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 235-36 (1989)).  The Ninth Circuit's observation in *Dukes* is persuasive.

Defendants' arguments go to the weight to be given to Dr. Halpert's testimony. Defendants' critiques of Dr. Halpert's testimony are factors that can be evaluated by the jury through cross-examination.  Defendants' Motion to Strike is denied.

**2.      Discrimination Claims (First and Second Claims for Relief)**

Plaintiff asserts that MITCH discriminated against her because of her gender and a "belief that plaintiff, being a woman, would be less committed to her job after the birth of her child[,]" in violation of Title VII and Oregon Revised Statute (ORS) 659A.030.  First Am. Compl. at ¶¶ 62, 70.

9 - OPINION AND ORDER

Under federal and Oregon law, an employer may not discriminate against an employee on the basis of gender, including pregnancy, childbirth, and other related medical conditions. 42 U.S.C. § 2000e(k), 2000e-2(a); ORS § 659A.029-.030. The standard for establishing a prima facie case of discrimination is identical under federal and Oregon law. *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001) (citing *Henderson v. Jantzen, Inc.*, 719 P.2d 1322, 1323-24 (Or. Ct. App. 1986)).

To make out a prima facie case of gender discrimination, a plaintiff must establish that "the challenged employment action was either intentionally discriminatory or that it had a discriminatory effect on the basis of gender." *Jespersen v. Harrah's Operating Co.*, 444 F.3d 1104, 1108-09 (9th Cir. 2006) (citation omitted). A plaintiff may also introduce evidence that the challenged employment action was made based on a gender stereotype. *Id.* at 1111 (citation omitted).

Once the plaintiff establishes her prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged employment action. *Id.* at 1109 (citation omitted). If the employer meets its burden, the plaintiff must show that the proffered reason is pretextual, either by persuading the court that the employer was likely motivated by a discriminatory reason or by showing that the employer's proffered explanation is unworthy of credence. *Dawson v. Entek Int'l*, 630 F.3d 928, 934-35 (9th Cir. 2011) (applying burden-shifting framework to state and federal claims). The plaintiff's burden at this stage is less onerous than at the prima facie stage. *Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1158 (9th Cir. 2010).

Plaintiff's primary allegation is that defendants discriminated against her based on Lorence's stereotypes regarding how pregnant women and mothers should behave. Plaintiff

10 - OPINION AND ORDER

offers evidence showing that Lorence encouraged plaintiff to take an extended maternity leave or return to work part-time, Lorence characterized plaintiff's reactions during two potential miscarriage incidents as unprofessional and hysterical, and the Board failed to question Lorence's assessment of plaintiff's behavior when it voted to approve her termination. Plaintiff asserts that this evidence demonstrates that Lorence held gender stereotypes that motivated her decision to fire plaintiff. Pl.'s Opp. at 14-17 (citing Halpert Decl.). Plaintiff also asserts that previous employees at MITCH who became pregnant conformed to Lorence's alleged stereotype. This evidence raises an inference of discrimination.

Defendants' proffered reasons for terminating plaintiff's employment include: (1) plaintiff's failure to attend a training because she was waiting to sign mortgage documents, (2) plaintiff's insubordinate behavior during the meeting on August 28, 2009, (3) a threatening e-mail and text message sent by plaintiff to Lorence, (4) plaintiff's negative comments about the Riggs curriculum, (5) plaintiff's untruthfulness about being offered a job at Portland Public Schools, and (6) the totality of plaintiff's behavior over the previous months showing a lack of self-control. Defendants' evidence is sufficient to shift the burden to plaintiff.

In response, plaintiff has proffered evidence showing that defendants' purported reasons are pretextual. Even assuming that plaintiff violated school procedures, acted inappropriately, or failed to teach the required course work, plaintiff contends that she was the only MITCH employee who was terminated mid-contract. Plaintiff also asserts that evidence of pretext includes the multiple drafts of her termination letter, plaintiff's positive performance reviews and positive communications from defendants prior to her termination, and an e-mail showing that Lorence solicited specifically negative information about plaintiff's performance after this lawsuit

was filed. Plaintiff has met her burden. Defendants' motion for summary judgment is denied on plaintiff's discrimination claims.

### 3.    Retaliation Claims (Fourth and Fifth Claims for Relief)

Plaintiff has asserted claims for unlawful retaliation pursuant to ORS sections 652.355 and 659A.199. Section 652.355 protects against discrimination or termination by an employer because an employee made, discussed, or inquired about a wage claim. ORS § 652.355. Similarly, ORS 659A.199 prohibits employers from discharging or retaliating against an employee "for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation." ORS § 659A.199(1). Plaintiff contends that her request for six weeks of paid maternity leave at the August 28th meeting constitutes both a wage claim and a good faith complaint that MITCH was violating the law.

To survive summary judgment on her retaliation claims, plaintiff must show the existence of facts from which a reasonable factfiner could conclude that she engaged in the protected activity—making a wage claim or reporting a violation of law—and that defendants retaliated against her in response to that activity. *See Dawson*, 630 F.3d at 936 (discussing related statute ORS 659A.030); *El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1076 (9th Cir. 2005) (requiring the employee to prove that the employer was discharged or discriminated against because of the employee's wage claim). A similar burden-shifting analysis applies to retaliation claims; if the employer asserts a non-discriminatory reason for the employee's termination, the plaintiff must show that the employer would not have made the same decision absent a discriminatory motive. *El-Hakem*, 415 F.3d at 1076.

A wage claim, as defined in the statute, means "an employee's claim against an employer for compensation for the employee's own personal services, and includes any wages, compensation, damages or civil penalties provided by law to employees in connection with a claim for unpaid wages." ORS § 652.320(7).  Because the Oregon Supreme Court has not defined a "wage claim" under the statute, this court must look to Oregon appellate court decisions to determine how the highest state court would rule.  *See S.D. Myers, Inc. v. City & County of San Francisco*, 253 F.3d 461, 473 (9th Cir. 2001).

In *Perri v. Certified Languages International, LLC*, the Oregon Court of Appeals held that a wage claim must pertain to payment for work previously performed, and does not include a request for a prospective pay increase. 66 P.3d 531, 539 (Or. Ct. App. 2003).  Applying that reasoning, this court previously held that an employee's request for pay for a day that she was scheduled to be at jury duty constituted a wage claim. *Goins v. Winco Foods, LLC*, 617 F. Supp. 2d 1100, 1105 (D. Or. 2007).  In *Goins*, the plaintiff was summoned to jury duty, but was excused. *Id.* at 1102.  She then reported back to work as required by the employer's policy, but was told that she was not needed that day. *Id.* at 1101-02.  Because the employer's jury-duty policy provided that employees would be paid the difference between the juror fee and normal earnings, the plaintiff scheduled a meeting with her manager and insisted that she was entitled to be paid for the day. *Id.*  After a heated argument, in which the plaintiff called her manager a liar, the plaintiff was fired. *Id.* at 1102.

In finding that the plaintiff had made a "wage claim" during the meeting, this court rejected the employer's argument that the plaintiff had not rendered services for the day in question because the employer's policy provided for payment for jury duty service as the equivalent of payment for past services rendered. *Id.* at 1104-05.  Even though the plaintiff was

13 - OPINION AND ORDER

not actually entitled to pay for the day, this court held that her wage claim survived summary judgment because the plaintiff firmly believed that she was owed those wages when she made her claim. *Id.* at 1105.

Similarly in this case, a reasonable jury could find that plaintiff believed she was entitled to paid maternity leave at the August 28th meeting, and that she was pursuing that claim for paid maternity leave when she acted in an "insubordinate" manner during the meeting. A reasonable jury could also find that Lorence's decision to terminate plaintiff was partly based on plaintiff's insistence to pursue her claim for paid leave. The proximity between the plaintiff's request for paid maternity leave and the allegedly retaliatory employment decision (three days) constitutes circumstantial evidence of retaliation. *See Dawson*, 630 F.3d at 937.

Although plaintiff requested leave benefits rather than actual wages, the Oregon courts consider benefits to be part of an employee's compensation package akin to wages. *Wyss v. Inskeep*, 699 P.2d 1161, 1165 (Or. Ct. App. 1985). Plaintiff's claim for leave is no different than a claim for wages. The statute requires only a "claim against an employer for compensation."

As to plaintiff's whistle-blower claim under ORS 659A.199, defendants contend that plaintiff never "reported" an alleged violation to anyone other than Lorence, her husband, her mother-in-law, and her sister-in-law. The Oregon courts have yet to define when an employee has "good faith reported information" of an alleged violation of law. *See Beauchamp v. AGC Heat Transfer, Inc.*, No. CV-09-1407-HU, 2010 WL 4641684, at *3-4 (D. Or. Nov. 8, 2010) (discussing inconsistent definitions for "report" in Oregon's anti-retaliation statutes). After evaluating the express language and purposes of Oregon's anti-retaliation statutes, this court concluded that a companion statute protecting an employee who "good faith reported criminal activity" applies to reports made to the employer or to an outside third-party that was "intended to

14 - OPINION AND ORDER

or likely to result" in a criminal or civil proceeding. *Roche v. La Cie, Ltd.*, No. CV-08-1180-MO,
2009 WL 4825419, at *7 (D. Or. Dec. 4, 2009) (citing *Jensen v. Medley*, 11 P.3d 678, 688 (Or.
Ct. App. 2000) (explaining that the purpose of the anti-retaliation statute is "encouraging citizens
to assist in the enforcement of state and federal laws")).

Applying similar reasoning to ORS 659A.199, the statute protects employees who make
an external or internal report that is intended or likely to result in the employer's enforcement or
compliance with state and federal law. The record establishes a factual dispute regarding
whether plaintiff's alleged "report" to Lorence was intended or likely to result in the enforcement
or compliance with state and federal law. Arguably, a reasonable jury could find that plaintiff's
demand for her paid leave was intended to require MITCH to comply with its duties under the
state and federal leave acts. Even though MITCH has too few employees to be covered under the
Oregon Family Leave Act and Federal Medical Leave Act, an employee need not be objectively
correct about the existence of a statutory violation to sufficiently state a prima facie claim of
retaliation. *Goins*, 617 F. Supp. 2d at 1105 (citing *Yeager v. Providence Health Sys. Or.*, 96 P.3d
862, 866 (Or. Ct. App. 2004)). Plaintiff asserts that her complaint to Lorence was based on her
good faith belief that MITCH was violating wage and hour regulations as well as plaintiff's
employment contract. Pl.'s Opp. at 27-28. Viewing the evidence in a light most favorable to
plaintiff, as is required at this stage, this court cannot resolve plaintiff's retaliation claims as a
matter of law. Defendants' motion for summary judgment is denied on plaintiff's retaliation
claims.

### 4.    Promissory estoppel (Sixth Claim for Relief)

Plaintiff's Sixth Claim for Relief asserts that Lorence's alleged oral promise of six weeks
of paid maternity leave created an enforceable contract based on promissory estoppel. The

15 - OPINION AND ORDER

elements of promissory estoppel include: (1) a promise; (2) which the promisor, as a reasonable

person, could foresee would induce conduct of the kind which occurred; (3) actual reliance on

the promise; and (4) a substantial change in position. *Neiss v. Ehlers*, 899 P.2d 700, 703-04 (Or.

Ct. App. 1995).

Defendants assert that plaintiff was never promised paid maternity leave. Viewing the

evidence favorably to plaintiff, this court cannot conclude as a matter of law that the alleged

promise of paid maternity leave did not exist.

Defendants also assert plaintiff that had no reasonable basis to rely on the alleged promise

because she was an at-will employee. Plaintiff responds that she was induced to accept

employment with MITCH for the 2009-2010 school year in reliance on the promise that paid

maternity leave would be part of her compensation.

"An employer's offer of an employment benefit amounts to an offer of a unilateral

contract, and the employee accepts that offer by commencing or continuing employment."

*Funkhouser v. Wells Fargo Corp.*, 197 P.3d 592, 594 (Or. Ct. App. 2008) (citation omitted).

Once the employee tenders part performance by commencing or continuing employment, the

employer cannot deprive the employee of the benefit after the employee's right to it has vested.

*Id.* at 594-95. For an employee's right to an employment benefit to vest, the employee must have

satisfied all conditions precedent to eligibility for the benefit under the employer's policy. *Id.* at

595 (citations omitted).

Plaintiff has provided evidence from which a reasonable juror could find that she was

advised of her eligibility for paid maternity leave at the time she signed her employment

agreement, that plaintiff believed paid maternity leave would be included in her compensation for

the 2009-2010 year, and that plaintiff was induced to accept the position based on the leave

16 - OPINION AND ORDER

provision. *See Harryman v. Roseburg Rural Fire Prot. Dist.*, 420 P.2d 51, 52 (Or. 1996).

Lorence also knew that plaintiff was pregnant at the time plaintiff signed her employment

contract, so a jury could reasonably infer that Lorence could foresee that plaintiff would be

induced by the promise.

       However, the question is close. Plaintiff does not dispute that she was an at-will

employee. As the Oregon Court of Appeals explained, when a plaintiff's employment agreement

is at-will, no reasonable basis for reliance or a substantial change of position can be attributed to

the promise of employment. *Slate v. Saxon, Marquoit, Bertoni & Todd*, 999 P.2d 1152, 1155

(Or. Ct. App. 2000). Plaintiff may have been terminated prior to her entitlement to maternity

leave. Her employment contract also specifically excluded the option of receiving cash in lieu of

any fringe benefit, and did not provide for a payment of accumulated leave upon her termination.

Nevertheless, at this stage, this court cannot conclude as a matter of law that plaintiff failed to

assert a viable promissory estoppel claim. Defendants' motion for summary judgment is denied.

      **5.      Breach of contract (Seventh Claim for Relief)**

       The parties do not dispute the existence of an enforceable employment contract. Plaintiff

claims that she is entitled to wages from September 1, 2009, the date following her termination,

until September 15, 2009, the date the Board voted to approve her termination.

       Defendants assert that plaintiff's allegation in her First Amended Complaint that she was

an employee of MITCH from "August 24, 2008 until August 31, 2009" precludes a breach of

contract claim. *See* First Am. Compl. at ¶ 8. Plaintiff responds that her First Amended

Complaint also includes allegations to support her breach of contract claim, including: (1)

Lorence advised plaintiff that she was terminated on August 31, 2009, (2) only the Board had the

authority to terminate an employee, (3) the Board did not approve plaintiff's termination until

17 - OPINION AND ORDER

September 15, 2009, (4) plaintiff was ready and able to work during that period, and (5) MITCH

failed to pay her any wages between August 31, 2009 and September 15, 2009. First Am.

Compl. at ¶¶ 111-122. Reading the Complaint favorably to plaintiff, her alleged admission that

her employment ceased on August 31, 2009 does not invalidate her contract claim.

Defendants also assert that Lorence could have placed plaintiff on unpaid leave during the

period in question. This argument is unsupported by the language of the employment contract,

and does not provide a basis for summary judgment. Defendants' motion for summary judgment

is denied on plaintiff's breach of contract claim.

### 6.    Unpaid wages (Eighth Claim for Relief)

Plaintiff seeks her unpaid wages for the period from September 1, 2009 through

September 15, 2009. Pursuant to Oregon's wage payment statutes, when an employer discharges

an employee, "all wages earned and unpaid at the time of the discharge or termination become

due and payable not later than the end of the first business day after the discharge or

termination." ORS § 652.140(1). The employee may also be entitled to penalty wages if the

employer willfully fails to make the payment by the end of the first business day after

termination. ORS § 652.150.

Defendants again assert that plaintiff is not entitled to any wages because she admitted in

her First Amended Complaint that she was an employee of MITCH from "August 24, 2008 until

August 31, 2009." This argument is rejected for the reasons already discussed.

Plaintiff was terminated when MITCH severed its employment relationship with her. *See*

*State ex rel. Nilsen v. Johnston*, 377 P.2d 331, 333-34 (Or. 1962). Although plaintiff's

employment relationship was severed on August 31, 2009, plaintiff's employment contract

designated the authority to terminate only to the Board. The Board did not approve plaintiff's

18 - OPINION AND ORDER

termination until September 15, 2009, and plaintiff received no wages for the period from September 1, 2009 through September 15, 2009.  Accordingly, defendants' motion for summary judgment is denied as to plaintiff's unpaid wages claim.

## CONCLUSION

For the reasons provided, defendants' Motion for Summary Judgment [18] is GRANTED as to plaintiff's Third Claim for Relief against defendant Debi Lorence based on plaintiff's concession that Lorence is not the proper party, and is DENIED as to plaintiff's remaining claims. Defendant Debi Lorence is dismissed from this action with prejudice.  Defendants' Motion to Strike [34] is DENIED.

The parties are also ordered to confer regarding whether this case is appropriate for referral to the services of a settlement judge, or to the court-directed mediation services under the supervision of former Oregon Supreme Court Justice Susan Leeson.  Counsel are invited to contact this court if such a referral is deemed appropriate.

IT IS SO ORDERED.

DATED this 4 day of April, 2011.

Ancer L. Haggerty
United States District Judge