UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


GRACIA H. MERRILL,                                              Case No. 3:10-CV-219-HA

       Plaintiff,

                                    FINDINGS OF FACT AND

     v.                                                        CONCLUSIONS OF LAW

MITCH CHARTER SCHOOL TIGARD,

       Defendant.

_____

HAGGERTY, District Judge:

     On January 10, 2012, six of plaintiff's claims from her First Amended Complaint alleging

gender discrimination, retaliation, promissory estoppel, breach of contract, and unpaid wages

proceeded to jury trial. The parties agreed that plaintiff's Third Claim for Relief[1] alleging a

violation of Oregon Revised Statute (ORS) 652.355 would be tried to the court. On January 13,

2012, this court took plaintiff's Third Claim for Relief under advisement.

     Upon review of the pleadings, sworn testimony of witnesses, other evidence introduced at

trial by the parties, and final arguments, the court makes the following findings of fact and

_____

[1]  This claim is numbered as plaintiff's Third Claim for Relief in the Amended Pretrial Order
    [130], and as the Fourth Claim for Relief in her First Amended Complaint.

1 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

conclusions of law as required by Rule 52(a)(1) of the Federal Rules of Civil Procedure:

JURISDICTION

1.      This court has jurisdiction over the subject matter of plaintiff's Third Claim for Relief

pursuant to 28 U.S.C. § 1367 because her Oregon statutory claim arises from the same nucleus of

operative facts as her claims predicated on federal question jurisdiction.

FINDINGS OF FACT

1.      Plaintiff, Gracia H. Merrill (plaintiff), was an employee of defendant M.I.T.C.H. Charter

School Tigard (MITCH) from August 24, 2008, until September 15, 2009.

2.      At all material times, Debi Lorence (Lorence) was the Executive Director of MITCH and

was plaintiff's supervisor while plaintiff was employed by MITCH.

3.      Plaintiff was hired in August 2008 to teach the fifth grade class at MITCH for the

2008-2009 school year.  Plaintiff had previously taught kindergarten and was excited to teach

fifth grade.

4.      Plaintiff was an effective fifth grade teacher during the 2008-2009 school year.  Plaintiff

was well-liked by her students, her students' parents, and other employees at MITCH.

Throughout the 2008-2009 school year, Lorence consistently praised plaintiff's work

performance and attitude in e-mail communications with plaintiff.  Pl.'s Ex. 11-22.  Plaintiff's

students received some of the highest test scores for Washington County on the state

standardized tests.

5.      Plaintiff often arrived at school early to prepare for class and to tutor students who needed

extra assistance.  She taught the required curriculum.  She was rarely late for meetings or other

events. She was professional and courteous to her students, her students' parents, and the rest of the staff at MITCH.

6.      At some point, Lorence hoped to incorporate more Riggs curriculum into the fifth grade. Lorence knew that plaintiff did not teach the full Riggs curriculum. Plaintiff taught the same amount of Riggs as previous fifth grade teachers.

7.      On June 11, 2009, plaintiff met with Lorence for her performance review. Plaintiff's review was extremely positive, and she was offered a position teaching fifth grade for the 2009-2010 school year. Pl.'s Ex. 9. Plaintiff accepted the offer. During the meeting, Lorence and plaintiff discussed the options for plaintiff's upcoming maternity leave. Plaintiff left the meeting believing that she would receive six weeks of paid maternity leave as part of her compensation for the 2009-2010 school year, while Lorence left the meeting believing that the parties would continue to discuss the options.

8.      Between June 2009 and August 2009, plaintiff did not attend at least one staff meeting at MITCH, and did not complete at least one training. Plaintiff notified Lorence in advance that she would not be at the staff meeting. In her communications with plaintiff over the summer, Lorence did not express any dissatisfaction with plaintiff's performance or her attendance at trainings.

9.      On Friday, August 28, 2009, plaintiff and Lorence met at Lorence's request to discuss plaintiff's maternity leave and some issues that had arisen over the summer. The meeting was held in Lorence's office. Lorence did not intend to terminate plaintiff's employment at this meeting.

3  - FINDINGS OF FACT AND CONCLUSIONS OF LAW

10.     During the meeting, plaintiff demanded six weeks of paid maternity leave that she genuinely believed Lorence had promised to her. Plaintiff told Lorence that: "You lied to me. You shot me in the foot." Plaintiff became upset, raised her voice at Lorence, and felt so ill that she abruptly ended the meeting. The kindergarten teacher, Marlena Maestas, could hear that plaintiff was upset from her nearby classroom, but could not hear the details of their conversation.

11.     Lorence denies that she ever promised to provide plaintiff with six weeks of paid maternity leave.

12.     Following the meeting, Lorence sent an e-mail to plaintiff as follows:

> I wanted to talk through options for you. The FMLA talks about your guaranteed job wage for up to 12 months when you return. The MITCH Staff handbook talks about getting paid while under the FMLA for accrued hours.
>
> Gracia I told you I would be looking into all of this over the summer and getting the feedback from the MITCH Board and an attorney. . . .

Def.'s Ex. 119.

13.     Shortly thereafter, plaintiff responded with an e-mail to Lorence that stated:

> You told me, very clearly, that it was your understanding that I could take twelve weeks off for maternity leave over the course of one year and that six weeks of those twelve weeks were paid leave. . . .
>
> I relied on your statement regarding six weeks of paid leave to my detriment. . . . I now feel betrayed because you are not delivering on what you clearly stated to me. Go to the board and fix this. Get me what you told me was going to happen. . . .

Def.'s Ex. 120.

14.     Lorence responded by providing plaintiff with the Staff Handbook and a copy of her teacher contract for the 2009-2010 school year.

4  - FINDINGS OF FACT AND CONCLUSIONS OF LAW

15.    At some point after the meeting, plaintiff sent a text message to Lorence that read: "You lied to me. I even told my parents last night 6 wks paid so i would be back shortly thereafter." Def.'s Ex. 122.

16.    On Friday night and over the weekend, Lorence contacted various members of the MITCH Board, including Board Secretary Gordon Fiddes and Board Chair Shana Hildreth (Hildreth). During their conversations, Lorence decided that plaintiff would be terminated on Monday morning based on plaintiff's conduct at the meeting on Friday.

17.    On Monday, August 31, 2009, Hildreth and Lorence walked into plaintiff's classroom and Hildreth advised plaintiff that her employment had been terminated. Hildreth did not provide plaintiff with any reasons for her termination.

18.    On September 22, 2009, Hildreth and Lorence sent plaintiff a letter that provided a list of reasons why MITCH terminated her employment, including: failure to follow required staff procedures, failure to complete or attend required training sessions, failure to teach required curriculum, tardiness, unprofessional behavior, and insubordination. Pl.'s Ex. 30. The letter went through several drafts before it was sent to plaintiff.

19.    Following her termination, plaintiff was unemployed from August 31, 2009 until August 2011. Her lost wages from August 2009 to August 2011 total $64,702.60, after deducting the payment she received on August 31, 2009 for $2,833.55 and mitigation in the amount of $1,473.85. Pl.'s Itemized List of Special Damages at 2. Plaintiff also paid $2,541.17 in COBRA insurance payments because of her termination. *Id.*

CLAIMS

1.    Following the trial, the only claim to be decided is plaintiff's Third Claim for Relief

5  - FINDINGS OF FACT AND CONCLUSIONS OF LAW

alleging a violation of ORS 652.355. To prevail on this claim, plaintiff must prove by a preponderance of the evidence that MITCH terminated her employment because she made a wage claim. *El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1076 (9th Cir. 2005). Defendant may prevail on this claim if it proves by a preponderance of the evidence that it would have made the same decision to terminate plaintiff's employment in the absence of the retaliatory motive. *Id.* at 1076-77.

CONCLUSIONS OF LAW

1.      Plaintiff made a wage claim or discussed a wage claim when she in good faith requested six weeks of paid maternity leave during her meeting with Lorence on August 28, 2009.

        A wage claim, as defined in the statute, means "an employee's claim against an employer for compensation for the employee's own personal services, . . ." ORS 652.320(7). Compensation includes more than just an employee's base wage or salary; it often includes leave, vacations, pensions, bonuses, and other benefits as part of the employee's total compensation package. *Wyss v. Inskeep*, 699 P.2d 1161, 1165 (Or. Ct. App. 1985); *see also State ex rel. Nilsen v. Or. State Motor Ass'n*, 432 P.2d 512, 516 (Or. 1967) (holding that earned vacation pay constituted "wages" under the statute). To be actionable under the statute, the claim for compensation must pertain to payment for work previously performed, and may not include a request for a prospective pay increase. *Perri v. Certified Languages Int'l, LLC*, 66 P.3d 531, 540 (Or. Ct. App. 2003).

        Although the claim must pertain to services previously rendered, the employee need not be objectively correct about his or her entitlement to the wages for the statute's anti-retaliation protection to attach. *Goins v. Winco Foods, LLC*, 617 F. Supp. 2d 1100, 1105 (D. Or. 2007)

6  - FINDINGS OF FACT AND CONCLUSIONS OF LAW

(citing *Yeager v. Providence Health Sys. Or.*, 96 P.3d 862, 866 (Or. Ct. App. 2004) (noting that several of Oregon's anti-retaliation statutes, including ORS 652.355, do not require that the alleged violation claimed by the employee be ultimately proved)).

During the meeting, plaintiff requested paid leave benefits rather than actual wages. In this instance, plaintiff's claim for paid maternity leave is equivalent to a claim for accrued or earned benefits. Although maternity leave is not a benefit that accrues for all employees like sick leave or vacation pay, *i.e.* the employee must give birth to receive this benefit, it is often negotiated as part of the employee's total compensation package for the year in which the employee is expected to give birth. As such, maternity leave is often an important part of a pregnant employee's compensation for that year. If the employer and employee agree to specific terms regarding the employee's maternity leave, the employer's promise to pay the benefit is tantamount to a promise to pay wages. *Wyss*, 699 P.2d at 1165. The court finds no distinction between an employee's request for a bonus or other benefit that was part of the employee's promised compensation and plaintiff's request for paid leave that she believed had been promised to her. *See id.* at 1168 n.12 (noting that an employer's failure to pay a bonus is considered a failure to pay "wages" under the Oregon Supreme Court's broad construction of the term).

Maternity leave may also qualify as compensation for past services rendered. An employer has the discretion to offer paid or unpaid leave, and for any amount of time—subject to the minimum requirements of the Family Medical Leave Act, 29 U.S.C. §§ 2601-54, and the Oregon Family Leave Act, ORS 659A.150-.186—that the employer deems appropriate based upon the employee's past performance and the employer's desire to retain the employee. By providing an employee with paid leave, the employer is both compensating the employee for his

7 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

or her past service, as well as encouraging the employee to continue his or her service. Paid leave, by its very nature, is a payment for past services rendered because the employee will have performed no work while on leave, and is generally not required to refund the wages if he or she declines to return to work following the period of leave.

In this case, the terms of plaintiff's maternity leave were not made clear at the time she signed her contract for the 2009-2010 school year. What is clear, however, is that plaintiff legitimately *believed* she would be receiving six weeks of paid maternity leave as part of her compensation for the 2009-2010 school year. The court finds plaintiff's testimony as to her subjective belief to be credible, and it is supported by Lorence's testimony that she believed that plaintiff felt that she was entitled to the paid leave. Unlike the employee in *Perri*, plaintiff was not requesting a future benefit that she believed was beyond the terms of her agreed upon compensation for that year. *Cf. Perri*, 66 P.3d at 534 (discussing the employee's request for a wage increase). She believed that she was entitled to paid leave based on her conversation with Lorence, and both discussed and made a claim for her leave during her meeting with Lorence on August 28, 2009.

Although plaintiff had not given birth at the time she requested paid maternity leave, she believed that she had earned the leave when she made her demand. By terminating plaintiff before she gave birth, defendant prevented plaintiff from completing her entitlement to the benefit. Defendant should not be able to shield its conduct in this matter.

2.      Plaintiff was terminated because she demanded six weeks of paid maternity leave.

Lorence and Hildreth testified that the decision to fire plaintiff was almost entirely based on plaintiff's conduct at the August 28, 2009 meeting. The court is informed by the jury's

8  - FINDINGS OF FACT AND CONCLUSIONS OF LAW

determination that plaintiff was not discharged because of her gender or a discriminatory motive based on plaintiff's failure to comply with gender stereotypes. Therefore, the hasty decision to terminate plaintiff's employment was based solely on plaintiff's statements or conduct during the August 28, 2009 meeting.

Although Lorence characterizes plaintiff's conduct during the meeting as insubordinate, the conduct which precipitated the termination was plaintiff's demand for paid leave. The vast majority of communications between plaintiff and Lorence, and between Lorence and the MITCH Board following the meeting focused on plaintiff's demand for paid maternity leave. *See* Pl.'s Ex. 31, 34; Def.'s Ex. 119-122. None of the written communications discussed plaintiff's alleged insubordination.

The only evidence that plaintiff's insubordination was the motivating factor in the Board's decision to terminate plaintiff's employment is Lorence's testimony. She testified that she described plaintiff's conduct to one of the Board members on Friday night, and the Board member responded that it sounded like insubordination. The court gives Lorence's testimony less weight because of the inconsistencies in her statements and the evasive manner of her testimony. Lorence's testimony that she would not have fired plaintiff on Monday morning if plaintiff had apologized for her insubordination is equally incredible. E-mail communications over the weekend confirm that the decision to terminate plaintiff had already been made. *See* Pl.'s Ex. 31-33.

Additionally, the court finds that the reasons provided in the post-termination letter concocted by Lorence and Hildreth are without merit. The stated reasons are inconsistent with plaintiff's performance during the 2008-2009 school year, and were admittedly not the catalyst

9 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

for the decision to terminate plaintiff's employment.

3.      MITCH would not have terminated plaintiff if she had not made the claim for six weeks of paid maternity leave.

        MITCH has not established that it would have terminated plaintiff absent the retaliatory motive. Plaintiff established that she was a successful teacher who was consistently praised by her supervisor. Again, the court finds that the purported reasons for MITCH's decision to terminate plaintiff's employment are rejected as incredible and contrary to the evidence presented at trial.

4.      Defendant violated ORS 652.355 by terminating plaintiff's employment in retaliation for her making a claim for six weeks of paid maternity leave.

5.      Plaintiff has suffered damages because of her improper termination. The court, however, requests further guidance from the parties regarding the proper amount of damages to be awarded under this claim. The parties are therefore ordered to file briefs on the damages issue. Plaintiff's brief must be filed by February 3, 2012, and defendant's responsive brief must be filed by February 17, 2012. Alternatively, the parties are invited to stipulate to the amount of the award. Plaintiff is ordered to prepare a Judgment after the court issues its ruling on the measure of damages.

6.      Plaintiff is entitled to her reasonable attorney fees and costs pursuant to ORS 659A.885.

        IT IS SO ORDERED.

        Dated this 23 day of January, 2012.

                                        Ancer L. Haggerty
                                        United States District Judge

10- FINDINGS OF FACT AND CONCLUSIONS OF LAW